COHEN MUSIC LAW
Evan S. Cohen (SBN 119601)
esc@manifesto.com
Maryann R. Marzano (SBN 96867)
mmarzano@cohenmusiclaw.com
104 West Anapamu Street, Suite K
Santa Barbara, CA 93101-3126
(805) 837-0100

BYRNES HIRSCH P.C.
Bridget B. Hirsch (SBN 257015)
bridget@byrneshirsch.com
2272 Colorado Blvd., #1152
Los Angeles, CA  90041
(323) 387-3413

Attorneys for Plaintiff Richard R. Finch

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| RICHARD R. FINCH, an individual,<br><br>Plaintiff,<br><br>v.<br><br>EMI CONSORTIUM SONGS, INC., a New York corporation d/b/a EMI Longitude Music,<br><br>Defendant. | Case No.: 2:21-cv-08032<br><br>**COMPLAINT FOR:**<br><br>(1) **DECLARATORY RELIEF; AND**<br><br>(2) **INJUNCTIVE  RELIEF** |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

- 1 -

Plaintiff RICHARD R. FINCH alleges as follows:

# I
# JURISDICTION

1. This court has subject matter jurisdiction over this action because it arises under the laws of the United States, 28 U.S.C. § 1331, and more particularly, because it arises under an Act of Congress relating to copyrights, 28 U.S.C. § 1338, namely, the Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq*.

2. This Court has personal jurisdiction over defendant because it has sufficient contacts with California such that jurisdiction can be exercised over it consistent with the Due Process Clause of the U.S. Constitution. Defendant has purposefully conducted activities within California and has availed itself of the privileges and benefits of conducting those activities within California in a continuous and systematic way (including having a corporate office here and registering to do business in California with the California Secretary of State) such that it should reasonably anticipate being sued in California.

3. This Court is empowered to issue a declaratory judgment and further necessary or proper relief pursuant to 28 U.S.C. §§2201 and 2202.

# II
# VENUE

4. Venue is proper in this district pursuant to 28 U.S.C. § 1400(a), in that all of defendants or their agents reside or may be found in this district.

5. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b) in that either: (1) one or more defendants reside in this district, and all defendants reside in this state; (2) a substantial part of the events or omissions giving rise to the claim occurred in this district; or (3) at least one defendant resides in this district, if there is no district in which the action may otherwise be brought.

## III

## PARTIES

6. Plaintiff RICHARD R. FINCH ("Finch") is an individual residing in Newark, Ohio. Finch is a songwriter, musician, record producer, and sound engineer. Finch also operates a music publishing company called Richard Finch Publishing, which has its principal place of business in Palo Alto, California.

7. Defendant EMI CONSORTIUM SONGS, INC. ("EMI" or "defendant") is a New York corporation, which has a substantial corporate office at 10202 West Washington Boulevard, Akio Morita Building, 5th Floor, Culver City, California 90232, within this judicial district.

## IV

## FACTUAL BACKGROUND

8. Since the first Copyright Act was enacted in 1790, that Act, and the several successive copyright statutes have always had a feature which allows a second chance for authors (or their heirs) to reclaim copyrights from unwise grants made by authors early on in their careers, close to the creation of the works. While the particular features of those laws, and the length of the terms and statutory scheme of the terminations involved, have changed and evolved, the strong "second chance" concept has remained. In fact, the very first act, the Copyright Act of 1790, borrowed that concept from the English Statute of Anne, enacted in 1709, the first copyright law. The theme continued in the Copyright Acts of 1831, 1870, and 1909.

9. Likewise, §203 of the Copyright Act of 1976 modified the Act of 1909 substantially but continued the "second chance" policy with full force. According to the Congressional Record, the purpose of the statute was to protect authors and their heirs from "the unequal bargaining position of authors" in dealing with unpublished works, because of "the impossibility of [an author] determining [his or her] work's

prior value until it has been exploited." H.R.Rep. No. 94-1476, at 124 (1976). Section 203 provides that authors (a term that includes both songwriters and recording artists) may terminate grants of copyright ownership thirty-five (35) years after the initial grant, generally computed from the date of the publication of those works subject to the grant. In the case of assignment of rights in works that have already been published, the statute provides that any such grants may be terminated on a date that is thirty-five (35) years from the execution of the grant.

10. This case involves approximately ninety-nine (99) musical compositions (the "Compositions") co-written by Finch and Harry Wayne Casey ("Casey") in the 1970s, while they were the founding members of the very successful musical group KC & The Sunshine Band, including all of their "hit" recordings from approximately 1973 to 1979. Among the Compositions are classic "disco" titles such as "That's the Way I Like It," "Shake Shake Shake Shake Your Booty," "Please Don't Go," "Keep It Comin' Love," "I'm Your Boogie Man," "Get Down Tonight," as well as "Rock Your Baby," as performed by George McCrae.

11. There is no factual issue that Finch and Casey are the sole co-writers of the Compositions; the copyrights in and to the Compositions were all duly registered in the United States Copyright Office in the 1970s, with virtually all of the registrations listing Finch and Casey as the sole authors, and the Compositions were registered near to the time that they were published. In or about 1976, Finch and Casey formed a music publishing company, Harrick Music, Inc. ("Harrick"), which published the Compositions. At various times from approximately 1973 to 1979, Harrick entered into a series of single-song co-publishing agreements with a company called Sherlyn Music Publishing, Inc. ("Sherlyn"), and that company controlled the entire copyrights in and to the Compositions, during that time period.

12. In or about 1982, however, disputes and disagreements arose between Finch and Casey, and KC & The Sunshine Band (that is, the version including Finch and Casey) no longer performed together. In addition, on or about October 27, 1983,

1  Finch agreed to assign all of his rights in and to the Compositions to Casey, by means
2  of a one-page document entitled "Intangibles Assignments" (the "1983
3  Assignment"). A true and correct copy of the 1983 Assignment is attached hereto as
4  Exhibit A.

5        13.    In the 1983 Assignment, Finch agreed to assign not only his portion of
6  the copyrights in and to the Compositions, but also his "writer's royalty interest and
7  other royalty interest or intangible property rights with respect to or in connection
8  with music which is or was individually owned by the Assignor… ." Finch also
9  agreed to give up any interest he had in Harrick, and, specifically, any copyright
10 interests that he had in the Compositions that were owned by Harrick.

11       14.    Since that time, in 1983, Finch has received *nothing* from the United
12 States exploitation of this large catalogue of world-famous and celebrated "disco"
13 hits; all such monies (including monies paid by Broadcast Music, Inc. ("BMI') for
14 United States public performances) have been uniformly paid to Casey (in the case
15 of the BMI "writer's share," for example, to the complete exclusion of Finch), and/or
16 Casey's assignees, such as Sherlyn and its assignees.

17       15.    On or about August 31, 1988, Sherlyn assigned all its right, title, and
18 interest in and to the Compositions to a company called Windswept Pacific Music
19 Publishing ("Windswept"). Thereafter, in July 1999, Windswept sold its assets to
20 EMI Music Publishing, a predecessor of EMI. EMI is the "grantee's successor in
21 title" of the United States copyrights in and to the Compositions, as that term is used
22 in 37 CFR § 201.10(d), and EMI is the correct recipient of a Notice of Termination
23 served pursuant to §203 of the Copyright Act.

24       16.    In 1985 and 2004, Finch attempted to have the 1983 Assignment set
25 aside on the grounds of fraud and incapacity. Finch was not successful. However, at
26 no time in the resolution of those two matters did Finch agree to any sort of novation
27 of the assignment set forth in the 1983 Assignment.
28

17. This 1983 Assignment to Casey is *exactly* the sort of transaction that may be terminated by the service of a Notice of Termination under §203 of the Copyright Act. Finch made an unwise transaction in 1983, and, when the time came for Finch to have the opportunity terminate that transfer pursuant to federal law, he did exactly that.

18. On September 30, 2019, Finch served a Notice of Termination (the "Notice") upon EMI, and, thereafter, caused the Notice to be recorded in the United States Copyright Office, on December 2, 2019, as document V9969 D353, P1 through P7. A true and correct copy of the Notice is attached hereto as Exhibit B. The effective date of termination for all the Compositions was October 1, 2021, and EMI has continued to exploit the Compositions after October 1, 2021, as if the Notice had not been served on September 30, 2019, and EMI is still exploiting the Compositions as of the filing of this suit. Finch is informed and believes, and thereon alleges, that at the time that Finch served the Notice, EMI was the sole owner of the United States copyright in and to each of the Compositions, subject to Finch's termination of a portion of those rights as of October 1, 2021.

# V
## CLAIM FOR RELIEF FOR
## DECLARATORY RELIEF AND INJUCTIVE RELIEF
### (Against All Defendants)

19. Plaintiffs reallege paragraphs 1 through 18, inclusive, as if fully set forth.

20. As of October 1, 2021, Finch is the co-owner of fifty percent (50%) of the United States copyright in and to the Compositions, and has the right to exploit his portion of the copyrights in and to the Compositions, or allow designees, administrators, or licensees to do so, as he sees fit.

21. Despite having full knowledge that the effective date of termination had

passed, EMI continues to exploit the entirety of the Compositions, as if the Notice had not been sent at all, in complete and willful disregard of the law.

22. Pursuant to 28 U.S.C. §§ 2201 & 2202, a case of actual controversy within the jurisdiction of this court has arisen and now exists between Finch on the one hand, and EMI, on the other hand, concerning their respective rights and duties as to Finch's interests in and to the Compositions, in that Finch contends that:

(a) The 1983 Assignment is fully subject to termination pursuant to §203 of the Copyright Act, and Finch duly complied with that statute and its attendant regulations in his service of a Notice of Termination on EMI, the current grantee of the rights and interests set forth in the Assignment. Finch is, therefore, the owner of a fifty percent (50%) interest in the United States copyright in each of the Compositions and may exploit those interests as he sees fit.

(b) The grant set forth in the 1983 Assignment may be terminated notwithstanding any agreement to the contrary, or any state court judgment relating to, or upholding the terms of, the 1983 Assignment. Neither the grant, nor any part of it relating to works subject to the Copyright, exists as of October 1, 2021, so a state-law attempt to enforce the grant set forth in the 1983 Assignment despite termination pursuant to §203 of the Copyright Act would be a violation of both the Supremacy Clause of the United States Constitution and § 203(a)(5) of the Copyright Act, which provides that no author shall be deprived of his or her termination right, and states, explicitly: "Termination of the grant may be effected notwithstanding any agreement to the contrary." In addition, to hold that state law is superior to the federal law of copyright, and Congress' intention to guarantee a "second

chance" to authors to terminate unwise grants, would be a violation of the Supremacy Clause of the United States Constitution.

Finch is informed and believes, and thereon alleges, that EMI contends that:

    (a)    Finch does not have the right to serve a Notice of Termination upon EMI; and

    (b)    Finch, who has received no United States royalties since 1983 for his co-authorship of the Compositions, is entitled to exactly nothing, because the 1983 Assignment can never be terminated.

23. Finch desires a judicial determination of his rights and duties regarding the Compositions, and a declaration that he currently owns fifty percent (50%) of the United States copyright in and to each of the Compositions.

24. Such a judicial determination of the rights and duties of the parties is necessary at this time, in that EMI is currently violating Finch's rights and has denied Finch the right to own Finch's portion of the United States copyright in and to the Compositions for the post-termination period. By doing these acts, and unless enjoined from engaging in like behavior in the future, EMI will be allowed to destroy the value and salability of Finch's portion of the copyrights, in direct contradiction of the second chance guaranteed by the Copyright Act.

25. Moreover, there is an actual and immediate disagreement between EMI and Finch with regard to the ownership of the United States copyright in and to each of the Compositions.

## VII

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment as follows:

1. For a declaratory judgment pursuant to § 203 of the Copyright Act, that: (a) Finch's Notice of Termination served on September 30, 2019 was and is valid and in conformity with the statute and with its attendant regulations; (b) on account

of that Notice, Finch has validly terminated the 1983 Assignment; (c) the 1983 Assignment is fully subject to termination; (d) accordingly, Finch is the owner, as of October 1, 2021, of fifty percent (50%) of all right, title, and interest in and to the United States copyright for the Compositions, and each of them, including the so-called "writer's share" of United States public performance monies collected by performing rights organizations, including BMI; and (e) EMI, or each of them, shall not exploit or attempt to exploit any such interests described herein as of October 1, 2021.

    2.    To the extent that EMI collects any income or revenue that belongs to Finch (as described in the preceding paragraph), that is, prior to the filing of this action or during the pendency of this action, for an accounting of such monies, and payment of those monies over to Finch, at the time of trial or at such time as judgment is entered in this matter.

    3.    For a preliminary and permanent injunction enjoining and restraining EMI, and its agents, servants, directors, officers, principals, employees, representatives, subsidiaries and affiliated companies, successors, assigns, and those acting in concert with it or at its direction, and each of them, from continued denial and disregard of the Notice of Termination served by Finch, to the extent that EMI bases said grounds on the legal and factual issues that are adjudicated in this suit;

    4.    For costs of suit incurred herein;

    5.    For reasonable attorney's fees as part of the costs, pursuant to §505 of the Copyright Act; and

    6.    For such other and further relief as the court should deem just and proper.

Dated: October 8, 2021

COHEN MUSIC LAW

By:  /s/ Evan S. Cohen
      Evan S. Cohen

Attorneys for Plaintiff Richard R. Finch

**DEMAND FOR JURY TRIAL**

To the extent that a jury trial is available as to any of the claims set forth herein, plaintiff hereby demands a jury trial as to those claims.

COHEN MUSIC LAW

Dated:  October 8, 2021          By:   /s/ Evan S. Cohen
                                       Evan S. Cohen

Attorneys for Plaintiff Richard R. Finch